IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2006 JUN -6  P 4: 05

| | |
|---|---|
| JACK A. CLARKE<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC.<br><br>Defendant. | §<br>§<br>§<br>§<br>§  CASE NO. CV-03-<br>§<br>§  2:06CV508-D<br>§<br>§<br>§ |

**COMPLAINT AND JURY DEMAND**

**I. PRELIMINARY STATEMENT**

1.       This is an action for age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and for age discrimination under the Alabama Age Discrimination in Employment Act (AADEA).

**II. JURISDICTION**

2.       This action arises under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq.; the Fair Labor Standards Act, 29 U.S.C. § 216; and the Alabama Age Discrimination in Employment Act of 1997, Ala. Code § 25-1-20, et seq.

3.       Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(4) and 29 U.S.C. §§ 216(b), 626(b) and (c)(1). In addition, the jurisdiction of this Court is pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act). Jurisdiction over claims based on Alabama law exists under the doctrine of Supplemental Jurisdiction. 28 U.S.C. § 1367.

## III. VENUE

4. The unlawful unemployment practices complained of herein occurred within the Middle District of Alabama, and this action properly lies herein. 28 U.S.C. § 1391.

## IV. PARTIES

5. Plaintiff is a citizen of the United States and at all times related to this action was over 40 years of age. Plaintiff is a resident of the City and County of Montgomery, Alabama.

6. Defendant Charter Communications, Inc. (Charter), is a corporation with its principal place of business in St. Louis, Missouri.

7. At all times relevant to the allegations in this Complaint, Defendant was doing business in Montgomery, Alabama.

8. Defendant is principally engaged in the business of commercial television production.

9. At all relevant times, Defendant employed more than 20 people and constitutes an employer within the meaning of 29 U.S.C. § 630(b) and Ala. Code § 25-1-20(2).

## V. PROCEDURAL PREREQUISITES

10. On November 14, 2005, Plaintiff filed a charge of discrimination against Defendant in the Birmingham, Alabama, office of the Equal Employment Opportunity Commission ("EEOC").

11. Plaintiff received a Right-to-Sue Letter from the EEOC dated March 10, 2006, and fewer than ninety days have elapsed since Plaintiff received same.

## VI. FACTS

12. Plaintiff was born on April 2, 1943, and was 62 years old at the time he was terminated by Defendant on June 14, 2005.

13. Plaintiff worked for Defendant's predecessor companies for 14 years before his hire by Defendant on July 1, 2001.

14. At the time of his termination, Plaintiff was General Sales Manager (GSM") of Defendant's Montgomery, Alabama office.

15. Plaintiff's primary responsibilities consisted of establishing advertising sales objectives and procedures, managing advertising availability, overseeing the assignment of accounts and budgets for the sales department, and supervising sales staff.

16. Plaintiff has consistently met the revenue and cash flow goals of Defendant.

17. Plaintiff has received awards from Defendant over the years for performing above and beyond expectations.

18. In February 2003, Plaintiff received the "Lifetime Achievement" award, the most prestigious award in the entire company.

19. In February 2004, Plaintiff received a sales achievement award for exceeding his goal.

20. At the time of his termination, Mike Kelley (Kelley) was the Defendant's Divisional Vice-President and Plaintiff's superior at Defendant.

21. Kelley is substantially younger than Plaintiff.

22. Kelley treated Plaintiff differently and less favorably than similarly situated younger GSM's in the terms and conditions of employment.

23. Kelley denied Plaintiff's request to attend the Cable Advertising Bureau in Chicago.

24. Kelley allowed substantially younger GSMs to attend the Cable Advertising Bureau in Chicago.

25. Attendance at the Cable Advertising Bureau event is recognition of the Defendant's commitment to the attendee's job security and fosters career advancement.

26. Attendance at the Cable Advertising Bureau carries with it a certain amount of prestige.

27. Attendance at the Cable Advertising Bureau allows a GSM to obtain important job-related information and to network with other managers.

28. Non-attendance at such gatherings reveals to peers a lack of support for the GSM, diminishes the GSM's prestige, and denies the GSM networking and training opportunities.

29. Kelley has refused to acknowledge Plaintiff at group meetings and rarely called on Plaintiff to answer group questions.

30. Kelley's actions were calculated to isolate Plaintiff, undercut his authority, and diminish his standing and job security at Defendant.

31. Kelley refused to come to Montgomery to meet Plaintiff's sales staff, but he met with the staff of other substantially younger GSMs.

32. Kelley's refusal to meet with Plaintiff's staff undercut Plaintiff's authority and diminished his standing and job security at Defendant.

4

33.     On or about February 2005, Plaintiff learned of a conversation between Kelley and Farrel Ryder, Defendant's Regional Vice-President, in which it was said, "Maybe Jack (*i.e.* Plaintiff) can't handle it any more."

34.     At that time, Plaintiff's performance was good and he received no notice from Defendant otherwise.

35.     Plaintiff was never informed by Defendant of anything he 'could not handle.'

36.     Also in February 2005, Farrel Ryder told Plaintiff that the Montgomery office needed a "shake up," and that Kelley had stated "You're (*i.e.* Plaintiff) getting a little long in the tooth."

37.     Ryder's statement - "a little long in the tooth" - was a euphemism for "you're getting old."

38.     The statement was a derogatory and a hostile reference to Plaintiff's age.

39.     Kelley made the decision to terminate Plaintiff's employment.

40.     Plaintiff was replaced by a substantially younger individual.

41.     After Plaintiff was fired, he spoke to Charles Gordon who had assumed Farrel Ryder's duties.

42.     Gordon asked Plaintiff how he was doing.

43.     Plaintiff replied that he was an emotional wreck as a result of the termination and its repercussions.

44.     Plaintiff also told Gordon, "I met a consultant from Atlanta who is a little older than I am who is interviewing me for a job." Gordon replied, "I didn't think anyone was older than you."

45. Gordon's biased statement, once again reflected Defendant's negative corporate culture regarding age.

46. On Friday, June 3, 2005, one of Plaintiff's subordinates informed him that she had a drug addiction problem.

47. Plaintiff had no prior indication of the problem through the subordinate's job performance or otherwise.

48. The employee simply came to Plaintiff's office with another employee and made the surprising announcement.

49. Plaintiff immediately made an appointment for the employee to see a physician and sent her home.

50. Plaintiff had no prior instruction from the Defendant that such a procedure was improper or that Human Resources should be notified before such action was taken.

51. Plaintiff attempted to notify Human Resources that same day, but was unsuccessful.

52. On Monday, June 6, 2005, the next business day, as Plaintiff was preparing to call Human Resources again about the issue, a Human Resources person notified Plaintiff that she had been informed that Plaintiff made an appointment with a doctor for the employee without first notifying Human Resources.

53. Plaintiff then explained the circumstances of the referral and his attempt and intention to notify Human Resources.

54. On June 14, 2005, Plaintiff was presented with a "Corrective Action Report" by Defendant, stating that Plaintiff was terminated effective June 17, 2005.

55. The Corrective Action Report stated that Plaintiff had no prior disciplinary record.

56. Evidently, Plaintiff was not considered for progressive discipline as is the norm - nor was the Employee Handbook followed in Plaintiff's case.

57. Plaintiff was not given a "verbal warning," a "written warning" or a "final warning" - all steps short of termination contained in Defendant's disciplinary policy.

58. Plaintiff was not given the benefit of progressive discipline as were younger employees.

59. Instead, Defendant listed numerous pretextual explanations for its discriminatory action and terminated Plaintiff.

60. The reasons Defendant gave for Plaintiff's termination were so numerous and wide-ranging that they must be taken as "canned" and inapplicable to the circumstances.

61. Defendant's reference to the "specific reasons" for termination in its Corrective Action Report contains inaccuracies and provides no legitimate non-discriminatory reason for Defendant's termination decision.

62. Even if Defendant's pretextual and "specific" reasons were true - which Plaintiff denies - they are of such a nature that progressive discipline short of immediate termination would be expected.

63. Upon information and belief, several GSMs at Defendant, similarly situated to Plaintiff, but substantially younger, who have engaged in conduct as or more egregious than anything Plaintiff is <u>alleged</u> to have done, were treated more favorably than Plaintiff and were either not disciplined or disciplined short of termination.

## VII. CAUSES OF ACTION

### COUNT I: AGE DISCRIMINATION IN VIOLATION OF THE ADEA

64. Plaintiff realleges and incorporates paragraphs 1-63.

65. Plaintiff's age was a motivating factor and made a difference in Defendant's decision to terminate Plaintiff and to discriminate against him in the terms and conditions of his employment.

66. Defendant knowingly and willfully discriminated against Plaintiff on the basis of his age in violation of the ADEA.

### COUNT II: DISCRIMINATION AND RETALIATION IN VIOLATION OF THE ALABAMA AGE DISCRIMINATION IN EMPLOYMENT ACT ("AADEA")

67. Plaintiff realleges the above paragraphs as if fully set out herein.

68. Plaintiff's age was a motivating factor and made a difference in the decision by Defendant to terminate Plaintiff and to discriminate against him in the terms and conditions of his employment.

69. Defendant violated the AADEA with knowing or reckless disregard of Plaintiff's rights under the Act.

## VIII. PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of the ADEA and the AADEA;

(b) enjoining and permanently restraining these violations of the ADEA and the AADEA;

(c) directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

(d) directing Defendant to reinstate Plaintiff, placing him in the position he would have occupied but for Defendant's discriminatory treatment and making him whole for all earnings he would have received but for Defendant's discriminatory treatment, including but not limited to, wages, pension, health and life insurance and other lost benefits;

(e) directing Defendant to pay Plaintiff an additional amount as liquidated damages as provided for in Section 7(b) of the ADEA, 29 U.S.C. § 626(b), and other applicable statutes;

(f) awarding Plaintiff the costs of this action together with reasonable attorneys' fees, as provided by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), and by incorporation, 29 U.S.C. §216(b);

(g) awarding Plaintiff all available damages under the AADEA; and

(h) granting such other and further relief as this Court deems necessary and proper.

## IX. JURY DEMAND

71.  Plaintiff demands a trial by jury.

Respectfully submitted this  6TH  day of June, 2006.

*/s/ M. Wayne Sabel*
M. WAYNE SABEL *(SAB002)*
Attorney for Plaintiff

*/s/ Mark Sabel*
MARK SABEL *(SAB004)*
Attorney for Plaintiff

*/s/ Maricia Woodham by mws*
MARICIA WOODHAM *(BEN050)*
Attorney for Plaintiff

**Sabel & Sabel, P.C.**
Hillwood Office Center
2800 Zelda Rd. Suite 100-5
Montgomery, Ala. 36106
(334) 271-2770
(334) 277-2882 (fax)

10

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Complaint has been served upon the following:

Charter Communications, Inc.
% CSC Lawyers Incorporating Services, Inc.
150 South Perry St.
Montgomery, AL 36104

by delivering same to the United States District Court Clerk's office, with instructions to mail, via certified mail, first class postage provided and prepaid and properly addressed on this the 6th day of June, 2006.

_____
M. WAYNE SABEL